## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BUTCH N. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-1441-F |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Butch Williams, seeks judicial review of a denial of disability insurance benefits and supplemental security income (SSI) benefits by the Social Security Administration.  This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C).  It is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings.

## I.    Agency Proceedings

Plaintiff filed an application for disability insurance benefits on April 12, 2004, and protectively filed his application for SSI benefits on March 16, 2004.  *See* Administrative Record [Doc. #9] (AR) at 54-56, 231-233.  In both applications, Plaintiff alleged a disability onset date of January 1, 2002. *Id.* Plaintiff's applications were denied initially and on reconsideration.  AR 23-24, 234, 238.  Following a hearing, an Administrative Law Judge (ALJ) found that Plaintiff was not disabled.  AR 14-21.  The Appeals Council denied

Plaintiff's request for review, AR 5-9, making the decision of the ALJ the final decision of the Commissioner.

## II.     **The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process required by agency regulations.  *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920.  He first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  AR 16.  At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: major depression and substance abuse disorder.  AR 16.[1]  At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations.  AR 17.  At step four, the ALJ made his residual functional capacity (RFC) determination:

> [T]he claimant has the residual functional capacity to perform work at all exertional levels. He has moderate limitations to: understand, remember and carry out short simple instructions; understand and remember detailed instructions; make judgment on simple work-related decisions.  He has slight impairment to interact appropriately with the public.  He has moderate limitations in his ability to interact appropriately with supervisors and co-workers.  He had moderate limitations in his ability to respond appropriately to work pressures and changes in a work setting.

---

[1]Plaintiff does not challenge the ALJ's step two finding.  The Court notes, however, that the consultative examiner found Plaintiff suffers from major depression with psychotic tendencies, antisocial tendencies and substance addiction disorder.  *See* AR 133-146, Psychiatric Review Technique form.  As discussed herein, the record is replete with evidence that Plaintiff's depression is accompanied by psychotic tendencies.

AR 17.  At step four, the ALJ determined Plaintiff cannot perform any past relevant work. At step five, the ALJ, relying on the testimony of a vocational expert, determined Plaintiff can perform a number of jobs and that these jobs exist in significant numbers in the national economy.  AR 20.

## III.   Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).   A  decision  is  not  based  on  substantial  evidence  if  it  is overwhelmed  by  other  evidence  in  the  record  or  if  there  is  a  mere  scintilla  of  evidence supporting  it.   *Branum  v.  Barnhart*,  385  F.3d  1268,  1270  (10th  Cir.  2004).   The  court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## IV.   Issues Considered on Appeal

Plaintiff claims that he lacks the residual functional capacity to perform full time work due to his mental impairments.  Plaintiff first claims the ALJ failed to fully weigh the evidence by relying on the Medical Source Statement completed by his treating psychiatrist,

Dr. Rajeswara Bhupathira, and ignoring other evidence in the record from the treating psychiatrist. In his second claim of error, Plaintiff contends the ALJ did not conduct a proper credibility analysis. In his third claim of error, Plaintiff contends the ALJ erred in failing to evaluate Plaintiff's low GAF scores. As his final claim of error, Plaintiff contends the ALJ erred in his residual functional capacity determination and that if Plaintiff's testimony were credited, the vocational expert's responses to hypotheticals incorporating that testimony establish Plaintiff would not be able to be employed.

## V.   **The Evidentiary Record**

For a period of time during 2003, Plaintiff was in prison due to a conviction for possession of cocaine. While in prison, Plaintiff was diagnosed as psychotic and depressed. AR 221; *see also* AR 225. He was also diagnosed with schizophrenia, paranoid type. AR 223. He reported that he had heard voices for a long time and that the voices tell him to do bad things. AR 209, 222. At one point during his incarceration, Plaintiff was placed on suicide watch but he denied thoughts of suicide and was removed from suicide watch after a few days. AR 208, 222. While in prison, he was prescribed Risperdal. AR 211, 217.[2]

Following his discharge from prison, Plaintiff applied for disability benefits. He was referred for a mental status examination conducted by Dr. Gary A. France on May 13, 2004. AR 101-105. Dr. France reported that Plaintiff has auditory and visual hallucinations. He hears "'evil stuff like telling him to kill himself or other people with last experience being

---

[2]Risperdal is used to treat schizophrenia and symptoms of bipolar disorder. *See Physician's Desk Reference* at 1676-1677 (61st ed. 2007).

right now.'" AR 102.  Plaintiff also reported "'seeing people.'"  *Id.*  Plaintiff told Dr. France

that he has trouble sleeping, has a poor appetite, cannot shop for food, do laundry, clean the

house or fix light meals.  AR 103.  Dr. France found gross thought disorder, poor memory

and abstract thinking, and fair judgment and short term memory.  AR 104.  He diagnosed

Plaintiff with polysubstance abuse, rule out major depression with psychotic tendencies and

antisocial tendencies.  He assigned Plaintiff a GAF of 50.  AR 104.[3]  Dr. France also opined

that Plaintiff may have some degree of learning disability and low average intelligence.  AR

105.  Dr. France found Plaintiff could not manage benefits on his own behalf due to his

history of polysubstance abuse.  *Id.*  *See also* AR 106.  At the time of Dr. France's

evaluation, Plaintiff reported he was not under a physician's care and was not taking any

medications.  AR 104-105.

In June 2004, Dr. Smallwood, a consultative examiner, completed a Mental Residual

Functional Capacity Assessment form.  AR 130-132.  Dr. Smallwood determined Plaintiff

was markedly limited in the ability to understand, remember and carry out detailed

instructions.  AR 130.  Plaintiff was also markedly limited in the ability to interact

---

[3]GAF (global assessment of functioning) scores can be found in the *Diagnostic and Statistical Manual of Mental Disorders*. The scores in this case represent the following:

41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

*Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000) at 34 (emphasis in original).

appropriately with the public.  AR 131.  Dr. Smallwood opined Plaintiff was not significantly limited in any other area of functioning.

At that same time, Dr. Smallwood completed a Psychiatric Review Technique form. AR 133-146.  He opined Plaintiff's mental impairments include affective disorder (major depression with psychotic features), personality disorder (antisocial tendencies) and substance addiction disorder.  AR 133, 136, 140, 141.  He opined Plaintiff has moderate restrictions in activities of daily living and moderate difficulties in maintaining social functioning.  AR 143.  He found mild difficulties in maintaining concentration, persistence or pace.  *Id*.

Treatment notes indicate that in September 2004, Plaintiff was admitted to the Oklahoma County Crisis Intervention Center for depression and suicidal ideation.  AR 196. Following Plaintiff's discharge Plaintiff began receiving mental health treatment at North Care Center.  On September 30, 2004, an intake assessment was completed.  AR 252-254. Plaintiff reported symptoms of depression, anxiety and psychosis including suicidal ideation and hallucinations.  AR 252.  He reported a history of drug and alcohol abuse but stated he last used drugs in February 2004.  *Id*.  Plaintiff reported that as a child, he set fires and exhibited cruelty to animals.  AR 253.  Plaintiff reported having ten jobs in the last five years, with the longest period of time on any job as two months.  AR 253.  His current medications included Lexapro and Seroquel.  AR 253.[4]

---

[4]Lexapro is used to treat depression.  *See Physician's Desk Reference* at 1190.  Seroquel is a medication used to treat psychotic disorders.  *See id.* at 690.

The clinician found Plaintiff had a flat affect and difficulty remaining focused and on task. AR 254. Plaintiff reported hearing voices. *Id.* The clinician found Mr. Williams to be of average intelligence with poor insight into his situation. Plaintiff was diagnosed with Major Depressive Disorder, recurrent, severe, with psychotic features. He was assessed a GAF score of 41. *Id.*

The following month in November 2004, an Initial Psychiatric Evaluation was completed at North Rock Medication Clinic by Dr. Rajeswara Bhupathiraju. AR 255-256. At that time, Plaintiff had poor eye contact, and his mood was anxious and depressed. AR 256. He had auditory and visual hallucinations and paranoid delusions. His memory and concentration were poor, his insight and judgment fair and his intelligence average. *Id.* He was diagnosed with Major Depressive Disorder, recurrent, moderate, with psychotic features. *Id.* His current GAF score was 50. *Id.* He was prescribed Geodon and Lexapro. *Id.*[5]

In January 2005, Plaintiff received the same diagnosis and Dr. Bhupathiraju increased the dosage of Geodon and Lexapro. AR 174,175. Plaintiff continued to have delusions and hallucinations. AR 175. Plaintiff also reported that he was homeless. *Id.*

In March 2005, Plaintiff appeared to be doing better. Delusions and hallucinations were absent. Plaintiff was seen at North Rock by Dr. Adonis Al-Botros who reported that

---

[5]Geodon is an antipsychotic drug. *See Physician's Desk Reference* at 2529-2530.

Plaintiff was doing quite well.  AR 169.  Dr. Al-Botros prescribed Paxil and decreased the dosage of Geodon.  AR 168.[6]

In May 2005, Plaintiff reported that he was feeling "weird" on the Geodon.  AR 165. He also reported hearing constant voices.  AR 164.  Dr. Bhupathria prescribed Paxil but the Geodon was replaced with Abilify.  AR 164.[7]

In June 2005, Plaintiff's diagnosis remained unchanged.  He again reported delusions and hallucinations.  He was continued on Paxil and Abilify.  AR 161-162.  Plaintiff's condition remained unchanged in August 2005.  His dosage of Paxil was increased.  The Abilify was discontinued and Plaintiff was instead prescribed Seroquel.  AR 159-160.

In October 2005, the dosage of Seroquel was increased.  AR 157, 158.  In that same month, clinicians at North Care Center along with Dr. Bhupathira conducted an annual review.  Plaintiff's diagnosis was Major Depressive Disorder, recurrent, severe, with psychotic features.  AR 196.  Plaintiff's Mental Health Services Plan at North Care Center was designated as one of "moderate complexity."  AR 200.  His highest GAF score in the last year was reported as 41.  AR 196.  Plaintiff reported depression 7 out of 7 days.  He was having problems with short term memory, concentration and his ability to stay focused on tasks.  He reported hallucinations 7 out of 7 days.  AR 197.  It was noted that Plaintiff has "symptoms of depression, anxiety and manic episodes as a result symptom[s] often interfere

---

[6]Paxil is a medication used to treat major depressive disorder.  *See Physician's Desk Reference* at 1530.

[7]Abilify is another type of antipsychotic medication.  *See Physician's Desk Reference* at 2450-2451.

in his attempts to complete daily activities." AR 200.  It was further noted that "[d]ue to the severity of symptomology of mania the consumer displays, he had difficulty focusing on tasks." *Id.*

The most recent records from North Rock Medication Clinic and North Care Center included in the record are from January 2006.  Plaintiff's diagnoses remained unchanged. His GAF remained at 41.  AR 153, 193.   In that same month, Dr. Bhupathiraju completed a Medical Source Statement.  Tr. 150-152.  He found Plaintiff had moderate restrictions in his ability to understand remember and carry out instructions.  AR 150.[8]  He found moderate restrictions in Plaintiff's ability to respond appropriately to supervisors, co-workers and work pressures.  AR 151.   He also found only slight restrictions in Plaintiff's ability to interact appropriately with the public.  *Id.*  He also noted that Plaintiff had not been able to work since 2003.  *Id.*  He based this assessment on the fact that Plaintiff is "always depressed and psychotic." *Id.*  Nonetheless, he determined Plaintiff would be capable of managing his own benefits.  AR 152.

One month later in February 2006, Plaintiff testified at the hearing before the ALJ. Plaintiff testified he tries to stay at home because he thinks everybody is trying to hurt him. AR 276-277.   Consistent with the medical record, Plaintiff testified that he hears voices, even with the medications he takes.  AR 282.  Plaintiff stated he did not know whether the medications even helped him.  He testified he was hearing the voice of a man during the

---

[8]The Medical Source Statement defines moderate as: "[t]here is moderate limitation in this area but the individual is still able to function satisfactorily."  AR 150.

hearing and that the man wanted him to hurt himself and other people.   AR 282-283. Plaintiff also testified that he had recently tried to kill himself, once by putting a gun to his head and another time by taking all of his prescribed Lexapro at once.   AR 283-284.

A medical expert also testified at the hearing by telephone.   AR 266-272, 279-281. The evidence available to the medical expert included the opinion of Dr. Bhupathira contained in the Medical Source Statement and the opinion of Dr. France.   The medical expert did not have the complete  records from North Rock Medication Clinic or North Care Center.   AR 268.   Without the complete records from these treatment centers, the medical expert testified that he was rendering an opinion based on "a really very brief portion of this man's life" and that rendering an opinion on the limited record "might not be fair to him at all."   AR 271.   The medical expert further opined that references to Plaintiff's placement in Special Education classes indicated that additional information should be "forthcoming" and that "an IQ test might be warranted."   AR 280.

At the conclusion of the medical expert's testimony, the ALJ advised that a consultative examination may be ordered.   AR 281.   The ALJ further told the medical expert that even without a consultative examination, he would send him the additional records from North Rock Medication Clinic and North Care Center   "and ask you to give us a supplemental written report in the form of an interrogatory, just a basic written report on what it did to the overall picture when you saw that."   AR 281.   There is no indication in the record that a consultative examination was ordered or that the supplemental report from the medical expert was obtained.

10

VI.   **Analysis**

A.   **The ALJ Did Not Properly Weigh the Evidence**

Plaintiff challenges the findings in the ALJ's RFC determination that Plaintiff has "moderate" restrictions in activities of daily living, social functioning and concentration.  AR 17.  The ALJ's RFC determination is consistent with the findings set forth in the Medical Source Statement completed by the treating psychiatrist, Dr. Bhupathira.  AR 150-152. Yet, Plaintiff claims the ALJ erred in giving controlling weight to the Medical Source Statement because it conflicts with Dr. Bhupathira's treatment records and specifically, those records reflecting Plaintiff's ongoing delusions and hallucinations.  *See, e.g.,* AR 254.  As support for this claim, Plaintiff relies upon the low GAF scores Dr. Bhupathira attributed to Plaintiff. As set forth above, Plaintiff also brings a separate claim of error based on the ALJ's failure to evaluate Plaintiff's low GAF scores.  These two claims of error are addressed together.

The treating physician rule generally requires the Commissioner to give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To make this determination, the ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If

11

the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* (quotations omitted); *see also* §§ 404.1527(d), 416.927(d)(2).

In the typical case, a claimant argues the ALJ erred in refusing to give controlling weight to the opinion of the treating physician. Here, however, Plaintiff argues just the opposite. He claims the treating psychiatrist's functional assessments as reflected in the Medical Source Statement should not have been given controlling weight because they are neither well supported nor consistent with other substantial evidence in the record – namely the treating psychiatrist's own treatment records.

It is clear from the record that the ALJ gave controlling weight to the opinion of Plaintiff's treating psychiatrist Dr. Bhupathira. AR 19 ("As for the opinion evidence, the opinion of his treating physician, Dr. Bhupathira (Exhibit 7F and Exhibit 8F, page 51) has been used to form the basis of the residual functional capacity herein."). The ALJ did not discuss whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques or whether the evidence was consistent with other substantial evidence in the record.

The ALJ stated only the following with respect to Dr. Bhupathira's treatment of Plaintiff at North Rock Medication Clinic and North Care Center:

> The North Care Center/Community Counseling Center is now coordinating counseling and medications for the claimant. He has been diagnosed with major depressive disorder, recurrent, severe, with psychotic features. He was given a Global Assessment of Functioning score of 41 or with some impairment in reality testing (Exhibit 3F, page 14).

AR 17. While the ALJ referenced Plaintiff's GAF score of 41, he did not address the weight, if any, to be given to the GAF scores. *See Givens v. Astrue*, 251 Fed. Appx. 561, 567 (10th Cir. Oct. 18, 2007) (unpublished op.) (finding remand required where ALJ gave no reason for rejecting GAF assessment and "did not analyze the GAF score as the opinion of a treating physician as required by the regulations and our case law").

Significantly, Plaintiff's GAF scores (with 50 being the highest GAF score given to Plaintiff in the record and 41 being the primary GAF score) indicate mental impairments more severe than those set forth in the Medical Source Statement. While a GAF score does not necessarily indicate a problem related to the ability to hold a job, here Dr. Bhupathira opined in the Medical Source Statement that Plaintiff's depression and psychosis rendered him unable to work since 2003. AR 151. *Compare Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. July 17, 2003) (unpublished op.) (GAF scores of 50 or less indicate inability to keep a job and ALJ erred in failing to discuss GAF scores where treating physician indicated claimant's impairments interfered with his ability to keep a job). Accordingly, the ALJ erred in failing to analyze the GAF assessments and explain the weight given to those assessments.

Moreover, the GAF scores of 41 represent serious symptoms (moderate symptoms are represented by a GAF score of 51-60) and, therefore, appear inconsistent with the moderate functional restrictions check-marked by Dr. Bhupathira in the Medical Source Statement. The ALJ did not discuss the inconsistency between the GAF scores and the moderate restrictions set forth in the Medical Source Statement. Nor did the ALJ discuss the

inconsistency contained within the Medical Source Statement itself – on the one hand finding only slight or moderate restrictions in mental functioning and on the other hand finding that Plaintiff had been unable to work since 2003 due to depression and psychosis. Instead, the ALJ impermissibly cited favorable evidence while ignoring the unfavorable evidence. Because Plaintiff's GAF scores reflecting serious impairments are uncontroverted, the ALJ's error in this regard is particularly significant. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215, 1219 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record," and an "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability"); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."). Under these circumstances, the ALJ did not properly weigh the evidence and a remand is required.[9]

---

[9]Other non-medical evidence in the record reflects the severity of Plaintiff's mental limitations and appears contradictory to the rather limited restrictions identified in the Medical Source Statement. For example, Plaintiff was granted the right to file an appeal out of time to challenge the initial disability determination based on his limited capabilities. The following determination was made in this regard:

> Denial was sent 6/17/04 on initial claim. Butch is unable to read, he said he called and got some forms mailed to him but he was unable to get anyone to help him
>
> (continued...)

On remand, the ALJ should consider whether he needs to obtain clarification from Dr. Bhupathira regarding the inconsistencies in the Medical Source Statement and the treatment records. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).[10] If recontacting Dr. Bhupathira does not provide the evidence necessary to resolve the inconsistencies and supply substantial evidence upon which to base the RFC determination, the ALJ may need to order a consultative examination, a development of the record which was anticipated and suggested by the ALJ at the hearing. *See* 20 C.F.R. §§ 404.1512(f), 404.1519a, 416.912(f), 416.919a.

---

[9](...continued)
complete them. He was very confused about the difference between an appeal and the appointment set today for an initial claim. He held his head down during most of the interview and answered most of the questions with "I don't know" or "I don't remember." He was distrustful of signing forms, such as the 827's or the recon request without having someone he knows read it first. I explained everything to him in each step and he allowed me to keep the forms for the appeal. I don't believe that he fully understood that he filed an appeal today even after I explained everything thoroughly. He didn't know the address where he was staying so we had to call. He couldn't remember much of anything. He said he hears voices that tell him to kill people. He said he is very paranoid about someone killing him.

AR 28. *See also* AR 71.

[10]The applicable regulations state:

We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (addressing ALJ's duty to recontact treating physician).

15

In recommending a remand, the Court further addresses the ALJ's statement in the decision that "[t]he opinion of the medical expert at the hearing supports the findings of this decision."  The record wholly belies this statement.  As set forth above, the medical expert repeatedly expressed concern over the limited record before him.  He did not have the treatment records from North Rock or North Care to assist him in rendering his opinion. And, the ALJ did not, as represented on the record, obtain a supplemental opinion from the medical expert after providing the medical expert with these additional treatment records. On remand, the ALJ should also consider whether additional testimony is needed from the medical expert which would address Plaintiff's complete treatment record.

### B.    The ALJ's Credibility Analysis

Plaintiff next challenges the ALJ's credibility determination.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Hackett*, 395 F.3d at 1173 (quotation omitted).

The ALJ rejected Plaintiff's testimony at the hearing as not credible based on his history of substance abuse and his history of incarceration.  AR 19 ("The claimant's history of substance abuse, including crack cocaine, and his history of incarceration reflect unfavorably on his credibility.").  Plaintiff's incarceration was for possession of cocaine and,

16

therefore, directly tied to his former drug use.  As Plaintiff points out, however, the record indicates that Plaintiff did not use alcohol or drugs after February 2004.  *See, e.g.,* AR 102, 151, 254.  The treatment records from Dr. Bhupathira covering the time period September 2004 through January 2006, state that no substance abuse was observed or reported.  AR 110, 119, 153, 156, 158, 160, 162, 172, 175, 254. In addition, the ALJ expressly stated in his decision that: "[s]ince he got out of prison he has not used drugs or alcohol." AR 18.

Although the ALJ discussed some of the factors required to support a credibility determination, *see, e.g.,* Soc. Sec. Rul. 96-7p, those findings are not supported by the record.[11]  For example, the ALJ, citing the consultative examiner's Psychiatric Review Technique form, notes that Plaintiff "has had no other psychological treatment."  AR 19. While this statement was true at the time the consultative examiner completed the form, thereafter Plaintiff began receiving regular treatment at North Care and North Rock.  The

---

[11]In addition to the objective medical evidence, the following factors should be considered when assessing a claimant's credibility:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* Soc. Sec. Rul. 96-7p, 1996 WL 374185 at *3;  *see also id.* at *4-5.

ALJ's finding thus totally disregards Plaintiff's subsequent psychological treatment. As with the ALJ's RFC determination, the ALJ impermissibly cited only evidence favorable to the disability determination and ignored other uncontradicted evidence in the record.

It is recommended that this matter be remanded for further proceedings to assess the severity of Plaintiff's mental impairments based on the existing medical evidence and any additional evidence the ALJ may deem warranted. On remand, the ALJ should re-evaluate Plaintiff's credibility after fully considering his impairments and when evaluating his RFC. The ALJ should ensure that he addresses the factors required to support a credibility determination and comply with the requirement that he closely and affirmatively link his credibility conclusions to the evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (discussing legal standards for assessing credibility and remanding case due to ALJ's failure to link credibility determination to evidence of record).

## C.     The ALJ's Residual Functional Capacity Determination

In his final claim of error, Plaintiff contends that his testimony at the hearing before the ALJ requires a finding of disabled and renders erroneous the ALJ's residual functional capacity determination. This claim is dependent on the Court accepting as true all of Plaintiff's testimony at the hearing. It is the duty of the ALJ, however, not this Court, to determine the weight to be given to Plaintiff's testimony. Because the credibility of Plaintiff's testimony is an issue that will be addressed on remand, the Court need not further address this claim of error.

18

**RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by September __9th__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __20th__ day of August, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE